IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS M. SMITH, II *also known as* Elizabeth Jeanee Isbell, | ) ) ) ) | CASE NO. 4:19-cv-02819 |
| Petitioner, | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | MAGISTRATE JUDGE KATHLEEN B. BURKE |
| WARDEN MARK K. WILLIAMS, | ) ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

### I.     Introduction

Petitioner Thomas M. Smith, II, *aka*, Elizabeth Jeanee Isbell ("Ms. Smith") (hereinafter referred to as "Petitioner" or "Ms. Smith"),[1] who is incarcerated at FCI Elkton and proceeding pro se,[2] filed a petition, pursuant to 28 U.S.C. § 2241 ("Petition"), seeking good conduct time credit ("GCT credit") under the First Step Act of 2018 ("FSA").  Doc. 1.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.

---

[1] Petitioner, Thomas M. Smith, II, is a transgender inmate, also known as Elizabeth Jeanee Isbell ("Ms. Smith"). Doc. 1, p. 1. Petitioner has used feminine pronouns and "Ms. Smith" when referring to herself.  Thus, the undersigned will do the same.

[2] Ms. Smith filed her Petition pro se.  Doc. 1.  For a period of time, Ms. Smith was represented by counsel but the Court subsequently granted counsel's motion to withdraw and since then Petitioner has been proceeding pro se.  *See* March 4, 2020, non-document order appointing Federal Public Defender; Doc. 10 (motion to withdraw as counsel for Petitioner); Doc. 11 (April 13, 2020, order granting motion to withdraw).

The following motions are pending before the Court: (1) Petitioner's Motion to Advance the Cause (Doc. 3); (2) Petitioner's Motion for the Court to Take Judicial Notice of Recent Circuit Precedent (Doc. 5); (3) Petitioner's Motion for Default Judgment (Doc. 8); (4) Respondent's Motion to Dismiss (Doc. 13); (5) and Petitioner's Emergency Motion for Summary Judgment (Doc. 15).

Petitioner's Motion to Advance the Cause (Doc. 3) and Petitioner's Motion for the Court to Take Judicial Notice of Recent Circuit Precedent (*United States v. Woods*, 949 F.3d 934, 2020 U.S. App. LEXIS 3462 (6th Cir. 2020)) (Doc. 5) are DENIED.[3]

For the reasons explained below, the undersigned finds that Ms. Smith's Petition is without merit. Accordingly, the undersigned recommends that the Court DENY Petitioner's Motion for Default Judgment (Doc. 8); GRANT Respondent's Motion to Dismiss (Doc. 13); DENY Petitioner's Emergency Motion for Summary Judgement (Doc. 15); and DENY Petitioner's Petition (Doc. 1).

## II.     Background [4]

In her Petition, Petitioner challenges the Bureau of Prison's ("BOP") calculation of her GCT credit, arguing that the BOP did not credit her with all the time she believes she is entitled to under the First Step Act of 2018. Doc. 1, Doc. 13. Respondent agrees that Petitioner has exhausted her administrative remedies. Doc. 13, p. 2.

Ms. Smith pleaded guilty in the District Court for the Southern District of Illinois to one count of receipt of child pornography in violation of Title 18, United States Code, Section

---

[3] The undersigned notes, however, that the *Woods*' decision has been considered when issuing this Report and Recommendation.

[4] Petitioner agrees with the Introduction and Background as presented in Respondent's Motion to Dismiss, with the exception of the Respondent's position that Petitioner is not entitled to additional GCT credit. Doc. 14, p. 1.

2

2252(a)(2) on May 2, 2011 (Case No. 3:11-CR-30013). Doc. 13, p. 2. On June 13, 2011, the district court sentenced Ms. Smith to a term of 90 months imprisonment and 20 years supervised release. Doc. 1, p. 2; Doc. 13, p. 2. Ms. Smith was released from prison on November 20, 2017, and was serving her supervised release term when, on August 29, 2018, United States Probation filed a petition with the District Court for the Southern District of Illinois requesting that the district court issue a warrant for Ms. Smith's arrest and revoke her supervision because Ms. Smith had violated numerous conditions of her supervised release. Doc. 1, p. 2; Doc. 13, p. 2; *Untied States v. Smith*, 929 F.3d 828, 829 (7th Cir. 2019). On October 18, 2018, the district court revoked Ms. Smith's supervised release and imposed a 24-month term of imprisonment with no term of supervised release. Doc. 1, p. 2; Doc. 13, p. 2. Ms. Smith filed an appeal from the judgment, and on July 11, 2019, the Seventh Circuit Court of Appeals affirmed the judgment. Doc. 13, p. 2; *Smith*, 929 F.3d at 830.

As of December 13, 2019, Respondent stated that Smith's projected release date was June 28, 2020. Doc. 13, p. 3. (citing *See* Bureau of Prisons Inmate Locator, Register No. 08937-025, available at https://www.bop.gov/inmateloc/). This is the same date that Smith states, in an earlier filing in this case, was her projected release date. Doc. 3-1, p. 3, ¶ 2. However, a more recent BOP Inmate Locator search indicates that Petitioner's projected release date is July 25, 2020. *See* Bureau of Prisons Inmate Locator, Register No. 08937-025, available at https://www.bop.gov/inmateloc/ (last visited June 8, 2020).

Petitioner seeks additional GCT credit under the FSA, arguing that the BOP applied the FSA to her 24-month revocation sentence, crediting her an additional 7 days per year (14 days) for that 24-month term, but did not apply the FSA to her original 90-month prison term. Doc. 1, p. 2. Petitioner argues that she had not satisfied her original 90-month sentence and therefore she

3

is entitled to GCT credit under the FSA for an additional 52 day (7 more days of GCT credit for each year of her 90-month original sentence (7 1/2 years)). Doc. 1, p. 2.

### III. Analysis

Under 28 U.S.C. § 2241, the writ of habeas corpus extends to a prisoner "in custody in violation of the Constitution or laws or treatises of the Unites States." A petition for a writ of habeas corpus pursuant to § 2241 generally arises from "a challenge to the manner in which a sentence is executed, rather than the validity of the sentence itself." *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998) (citing *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991)). A § 2241 petition "is a vehicle . . . for challenging matters concerning the execution of a sentence such as the computation of good-time credits." *Sullivan v. U.S.*, 90 Fed. Appx. 862, 863 (6th Cir. Jan. 30, 2004).

Section 102(b)(1) of the FSA amended 18 U.S.C. § 3624(b)(1). *See* PL 115-391. The amendment to 18 U.S.C. § 3624(b)(1) altered the method for calculating GCT credits as follows:

> Section 102(b)(1)(A) of the First Step Act of 2018 amends 18 U.S.C. § 3624(b)(1) to increase the maximum allowable good-time credit from 47 to 54 days for each year of the sentence imposed. *See Hamm v. Fed. Bur. Prisons*, No. 1:19-cv-1110, 2019 WL 2717957, at *1 (N.D. Ohio June 28, 2019) ("Subparagraph 102(b)(1)(A) of the First Step Act amended 18 U.S.C. § 3624(b) to alter the availability of good-time credit for federal inmates.") (citing First Step Act, Pub. L. No. 115-391, § 102(b)(1)(A), 132 Stat. 5194 (2018)). *See also Bottinelli v. Salazar*, 929 F.3d 1196, 1197 (9th Cir. 2019) ("[P]aragraph 102(b)(1) [of the First Step Act] amends § 3624(b)—the good time credit provision—to require the BOP to permit up to 54 days per year."). Section 102(b)(1)(A) applies retroactively "to offenses committed before, on, or after the date of enactment of this Act, except that such amendments shall not apply with respect to offenses committed before November 1, 1987." *See Bottinelli*, 929 F.3d at 1200 (quoting § 102(b), 132 Stat. at 5213).

*Jamison v. Warden, Elkton Federal Corr. Inst.*, 2019 WL 5690710, * at 2 (S.D. Ohio Nov. 4, 2019), *report and recommendation adopted*, 2019 WL 6828358 (S.D. Ohio Dec. 12, 2019).

If certain requirements are met, a different section of the FSA makes the Fair Sentencing Act retroactive and allows for sentence reductions. *See e.g.*, *United States v. Kamber*, 2019 WL 399935, * at 1 (S.D. Ill. Jan. 31, 2019) (addressing sentence reductions under Section 404(b) of the FSA). Ms. Smith affirmatively states she is not seeking a sentence reduction under Section 404(b) of the FSA. Doc. 14, p. 1. Nor is Ms. Smith seeking credit under the FSA for participation in recidivism programs, which are provided for under Section 101 of the FSA, 18 U.S.C. § 3632(d). Doc. 14, pp. 1-2. She challenges only the BOP's calculation of GCT credits under 18 U.S.C. § 3624(b)(1).

Under § 3624(b)(1), "a prisoner who is serving a term of imprisonment of more than 1 year, . . . may receive credit toward the service of the prisoner's sentence . . . " *See* 18 U.S.C. § 3624(b)(1). Petitioner does not contend that the BOP has not credited her for time based on the 24-month post-revocation sentence she is currently serving. Petitioner contends that she should also receive credit under the FSA towards her current 24-month revocation sentence based on her 90-month prison on the basis that the original 90-month sentence was not satisfied. Doc. 1, p. 3. Petitioner's argument is based on her claim that when she was placed on supervised release in November 2017 her original sentence was not satisfied and, therefore, when her supervised release was revoked and an additional 24-month term of imprisonment was imposed it was not a new sentence; only a modification of her original sentence. Doc. 1, pp. 3-4, 11; Doc. 14, pp. 3-4 (relying on various cases for the proposition that a revocation sentence is part of the original underlying sentence).

A similar argument was made and rejected in *Jamison*, 2019 WL 5690710, * at 2. In that case, the petitioner, like Ms. Smith, was serving a post-revocation sentence and argued that, while he received good-time credits for the post-revocation sentence he was serving, he was also

5

entitled to good-time credit he would have received on his original 36-month sentence. *Id.* The petitioner in *Jamison* argued that, "he [was] entitled to those credits under *Johnson v. United States*, 529 U.S. 694 (2000), where the Supreme Court held that 'postrevocation sanctions' must be treated 'as part of the penalty for the initial offense.' *Johnson*, 529 U.S. at 700." *Jamison*, 2019 WL 5690710, * at 2. Like the petitioner in *Jamison*, Ms. Smith, among other cases, has relied on *Johnson*, 529 U.S. 694, in advancing her argument. *See e.g.*, Doc. 1, p. 11. In finding the petitioner's argument to be without merit, the court in *Jamison* explained that:

> Although petitioner is correct that "supervised release is 'part of the penalty for the initial offense,' *Johnson* [529 U.S. at 700]," petitioner's argument overlooks the fact that "the imprisonment that ensues from revocation is partly based on new conduct, is wholly derived from a different source, and has different objectives altogether; it is therefore a different beast." *United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005) (*citing United States v. Wirth*, 250 F.3d 165, 170 n.3 (2d Cir. 2001) ("The Court in *Johnson*[,529 U.S. 694,] addressed the very different question of whether application of [18 U.S.C] § 3583(h) to cases where the violation of supervised release, though not the original conviction, occurred after the effective date of § 3583(h) raised *ex post facto* concerns.")).
>
> Indeed, courts considering similar arguments under the First Step Act have rejected them as contrary to federal law. *See, e.g.*, *Garland v. Johnson*, No. 1:19-cv-53-P, 2019 WL 5106274, at *1 (W.D. La. Aug. 12, 2019) ("However, even if [petitioner] had been entitled to additional good time credit toward his sentence that he did not receive, federal law provides that those credits could not be used either to shorten the period of his supervised release or to shorten the period of any future imprisonment [petitioner] may be required to serve for violating the conditions of his release.") (citing 28 C.F.R. § 2.35(b) ("Once an offender is conditionally released from imprisonment, either by parole or mandatory release, the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or mandatory release."); *United States v. Johnson*, 529 U.S. 53, 60 (2000) ("The objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release."); *Bailey v. Southerland*, 821 F.2d 277, 278-79 (5th Cir. 1987) ("[T]he good time of one confinement does not carry over to a second confinement.")). *See also Kieffer v. Rios*, No. 19-cv-899, 2019 WL 3986260, at *1 (D. Minn. Aug. 23, 2019) ("[A] revocation sentence is separate and

6

distinct from the original underlying sentence for purposes of calculating good-conduct time.") (citing cases), *appeal filed*, (8th Cir. Sept. 9, 2019).[5]

*Jamison*, 2019 WL 5690710, * at 2 (alteration in original). For the reasons explained in *Jamison*, the undersigned finds that Ms. Smith's argument is without merit.

Additionally, Ms. Smith's reliance on the Sixth Circuit's recent decision in *United States v. Woods*, 949 F.3d 934, 2020 U.S. App. LEXIS 3462 (6th Cir. 2020) does not alter the undersigned's conclusion that Petitioner's argument is without merit. In *Woods*, the petitioner was serving a post-revocation sentence for a "covered offense" under the FSA[6] and was seeking a sentence reduction under Section 404(b) of the FSA. *Id.* at 936-937. The court considered the issue of whether a petitioner, who was serving a sentence for revocation of supervised release, was eligible for a sentence reduction under Section 404(b) of the FSA. *Id.* The court concluded that the sentence that Woods was currently serving was related to his original offense, which was a "covered offense" under the FSA and, he was therefore "eligible for resentencing (although not necessarily entitled to resentencing)." *Id.* at 937 (indicating that a revocation sentence is part of the penalty for the initial offense). In contrast to the petitioner in *Woods*, Ms. Smith is not seeking a sentence reduction under Section 404(b). Doc. 14, p. 1; Doc. 5. Rather, she raises an issue not addressed in *Woods*, i.e., the calculation of good-time credits under the FSA.

### IV. Conclusion and Recommendation

For the reasons set forth herein, the undersigned finds no basis for the Court to grant Petitioner the relief she requests. Accordingly, the undersigned recommends that the Court DENY Ms. Smith's Motion for Default Judgment (Doc. 8); GRANT Respondent's Motion to

---

[5] *Kieffer*, 2019 WL 3986260 has since been summarily affirmed on appeal. *See Kieffer v. Rios*, 2019 WL 8194484 (8th Cir. Oct. 2, 2019).

[6] The covered offense was a cocaine-related offense. *Woods*, 949 F.3d at 936.

Dismiss (Doc. 13); DENY Petitioner's Emergency Motion for Summary Judgement (Doc. 15); and DENY Ms. Smith's Petition (Doc. 1).

June 8, 2020　　　　　　　　　　　　　　　　/s/ *Kathleen B. Burke*
　　　　　　　　　　　　　　　　　　　　　KATHLEEN B. BURKE
　　　　　　　　　　　　　　　　　　　　　U.S. MAGISTRATE JUDGE

## **OBJECTIONS**

　　　Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).